***NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RODNEY BUSH-ROWLAND, | : : : | Civil Action No. 21-19652 (GC) |
| Petitioner, | : : | |
| v. | : : | **OPINION** |
| UNITED STATES OF AMERICA, | : : : | |
| Respondent. | : : : | |

**CASTNER**, District Judge

Presently before the Court is Petitioner Rodney Bush-Rowland's amended motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 4.) The Government filed a response to the motion (ECF No. 9), to which Petitioner replied. (ECF Nos. 11-12.) For the foregoing reasons, Petitioner's amended motion is **DENIED** in part; Petitioner is denied a certificate of appealability as to his denied claims; and Petitioner shall be granted a hearing as to his *Flores-Ortega* claim.

**I.    BACKGROUND**

In May 2020, Petitioner entered into a plea agreement with the Government in which he agreed to plead to a one-count Information charging him with filing a false tax return in violation of 26 U.S.C. § 7206(1). (*See* ECF No. 9-2.) This charge arose out of Plaintiff's filing on or about July 22, 2016 a 2015 tax return that underreported the revenue earned by Petitioner's S-corporation, To & Fro Transportation, Inc. (ECF No. 9-1.) Petitioner also failed to pay $147,566 in employment taxes that were due and owing for 2014, 2015 and 2016. (*Id.*) As part of his plea agreement, Petitioner agreed to waive his right "to file any appeal, any collateral attack, or any other writ or motion [including a motion under] 28 U.S.C. § 2255, which challenges the sentence

imposed" so long as that sentence fell within the applicable range suggested by the plea agreement. (ECF No. 9-2 at 9.[1])

On August 6, 2020, Petitioner appeared before the Honorable Robert B. Kugler, United States District Judge for his plea hearing. (ECF No. 9-4.) As part of that proceeding, Petitioner and his counsel prepared an application for permission to plead guilty. (ECF No. 9-3.) In that application, Petitioner indicated that he: (1) understood the charge against him; (2) understood that he was waiving his right to an indictment and was agreeing to plead guilty pursuant to an Information; (3) understood that he was waiving his right to trial; (4) understood his sentencing exposure; (5) indicated that he had discussed his plea and exposure with counsel; (6) had discussed his appellate and collateral attack waiver with counsel; (7) was satisfied with counsel's advice and explanations; (8) and wished to enter a plea of guilty. (*Id.* at 1-6.) During the plea hearing, Petitioner again confirmed that he understood that he was waiving his rights to proceed by way of an Indictment and a trial, that he understood his sentencing exposure, and that he understood the terms of his plea agreement including the appellate waiver. (ECF No. 9-4 at 1-24.) Petitioner also confirmed that he had discussed all of this with counsel, was satisfied with counsel's advice as to the plea agreement, and wished to plead guilty. (*Id.*) Petitioner also confirmed that he understood the sentencing court's discretion in imposing a sentence. (*Id.*)

During the plea colloquy, Petitioner provided the factual basis for his guilty plea. (*Id.* at 24-28.) Petitioner admitted that he was the sole owner and operator of To & Fro, that he signed the tax returns in question under penalty of perjury, that he failed to report a large portion of cashed checks as part of the business's income, that he was aware he was required to report that income,

---

[1] Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

and that he willfully chose to underreport earnings in his return. (*Id.* at 24-26.) Petitioner also admitted to reporting having paid employment taxes for To & Fro to the IRS, while having failed to pay $147,566.00 in owed employment taxes. (*Id.*) Petitioner confirmed that he understood all of these actions to be unlawful, and pled guilty to the sole charge in the Information. (*Id.* at 27-28.) Petitioner was thereafter sentenced on August 11, 2021, to six months' imprisonment, one year of supervised release, as well as a fine and restitution. (ECF No. 9-5.)

In support of the Government's answer in this matter, Petitioner's plea counsel, Robert H. Williams, prepared a certification providing some detail as to his discussions with Petitioner during Petitioner's criminal case. (*See* ECF No. 9-6.) According to counsel, he engaged with plea negotiations on Petitioner's behalf and was able to negotiate a loss amount significantly below the Government's original calculation, was able to secure the ability to argue against an obstruction of justice enhancement, and secured the Government's promise not to pursue other charges related to Petitioner's false returns which would have exposed him to "multiple" felony charges and would have carried significant prison sentences. (*Id.* at 2-3.) Counsel further asserts that he fully discussed the plea agreement with Petitioner, including the collateral attack and appeal waiver, and advised Petitioner that he believed the agreement was in his best interests, to which Petitioner agreed in pleading guilty. (*Id.* at 4.) Following Petitioner's sentencing, counsel asserts that he "met with [Petitioner] to discuss whether he wanted to file an appeal" on August 16, 2021. (*Id.*) During that meeting, which ran nearly an hour, they discussed the merits of a potential appeal and how it would be affected by the plea waiver, and Petitioner ultimately "conveyed to [counsel] that he did not want to file an appeal because an appeal likely would not prevail and he had waived his appellate rights." (*Id.*) Counsel further stated that Petitioner "clearly and unambiguously told me that he did not want to file an appeal." (*Id.*) Counsel further states that Petitioner never asked for

3

an appeal to be filed, and that he would have filed a notice of appeal had Petitioner requested one. (*Id.* at 5.)  Counsel has also provided the Court with a copy of billing records confirming the timing of that August 16 meeting, as well as a copy of a letter he sent Petitioner afterwards, confirming his understanding that Petitioner did not want to file an appeal, and that Petitioner understood that he had a limited time within which to change his mind.  (*Id.* at 6-7.)

## II.     DISCUSSION

### A.     Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.  Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *accord United States v. Folk*, 954 F.3d 597, 602 (3d Cir. 2020) (citations omitted); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B. Analysis

#### 1. An Evidentiary Hearing is Required Only as to Petitioner's *Flores-Ortega* Claim

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. Because Petitioner's claims other than his *Flores-Ortega* claim are without merit for the reasons set forth below, no evidentiary hearing is required as to those claims. As a hearing is required to resolve the factual dispute in Petitioner's *Flores-Ortega* claim as discussed below, this Court will hold a hearing as to that claim only.

#### 2. Petitioner's Ineffective Assistance of Counsel Claims

In his amended motion to vacate his sentence, Petitioner raises three claims of ineffective assistance of counsel. The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . .

> whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

[*Judge*, 119 F. Supp. 3d at 280-81.]

In his first ineffective assistance claim, Petitioner asserts that his counsel "coerced" him into accepting a guilty plea to time-barred charges, and that had counsel done more investigation he would have discovered the time-bar issue and potentially other defenses to the charges. Turning

first to the timeliness issue, the Court notes that Petitioner is incorrect. Pursuant to 26 U.S.C. § 6531(a)(5), the limitations period for a violation of § 7206(1), such as that to which Petitioner pled guilty, is six years. As Petitioner admitted in his guilty plea, and as alleged in the Information, Petitioner filed his tax return on or about July 22, 2016, and pled guilty in 2020, well within six years of Petitioner's unlawful conduct. The charges against Petitioner were timely, and any motion by counsel to dismiss on time-bar grounds would have been without merit. Counsel cannot be ineffective for failing to file a baseless motion. *United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Therefore, counsel was not ineffective in failing to raise the time-bar issue.

To the extent Petitioner otherwise alleges that counsel failed to fully investigate his case before advising him to plead guilty, success on such a claim would require Plaintiff to allege in detail what other exculpatory information would have been discovered had counsel performed a more detailed investigation. *Strickland*, 466 U.S. at 690-91 (defining counsel's duty to investigate); *see, e.g.*, *Rodriguez v. United States*, No. CV 18-15234, 2023 WL 2625009, at *5 (D.N.J. Mar. 24, 2023) (holding that the petitioner failed to demonstrate what information counsel would have discovered if further pre-plea investigation had been performed); *Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016) (holding counsel was not ineffective by failing to discover information underlying a report that was not filed until three months after the petitioner was sentenced). Petitioner does not even attempt to make such a showing and presents no exculpatory information that might have been discovered. Petitioner thus fails to show any prejudice from the alleged inadequate investigation, and his first claim fails as such. *Id.* at *6. ("Petitioner's failure to show deficient performance is sufficient to show that counsel was not ineffective in his investigations . . . .")

7

In his second claim of ineffective assistance, Petitioner alleges that counsel proved ineffective in failing to file a motion to suppress bank records which he believes were improperly seized and which led to the charges against him. Even if Petitioner could show some illegality or irregularity in the seizing of those records from Petitioner's bank—a showing Petitioner does not even attempt to make in his amended motion to vacate his sentence—the Fourth Amendment exclusionary rule does not apply to the seizure of records from a third-party bank, even where the Government engages in chicanery to acquire those records. *See, e.g*, *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998) (discussing *United States v. Payner*, 447 U.S. 727, 735 (1980)). A motion to suppress the bank's records would therefore have been without merit, and the failure to file such a motion was not ineffective assistance of counsel.[2] *Aldea*, 450 F. App'x at 152; *Werts*, 228 F.3d at 203.

In his final ineffective assistance of counsel claim, Petitioner asserts that counsel proved ineffective in coercing him "into giving up [his] appeal rights by having [him] go to [counsel's] office and sign papers stating [Petitioner] wouldn't appeal knowing [he] truly wanted to" and in having Petitioner agree to "sign away" his right to file a motion to vacate his sentence which Petitioner believes is unlawful. (ECF No. 4 at 9.) Petitioner also alleges counsel proved ineffective in permitting him to plead guilty to crimes over which Petitioner believes this Court lacked subject matter jurisdiction, and in permitting Petitioner to agree to a loss amount of between $100,000 and $250,000, which Petitioner asserts "was never charged by the information." (*Id.*) Petitioner does not elaborate further on the basis for this claim.

---

[2]   Petitioner's claim also fails for lack of prejudice because he has not shown how the suppression of the bank records would have undermined the case against him or led to him refusing to plead guilty.

Turning first to the issue of the appellate and collateral attack waiver, Petitioner is mistaken in his belief that such waivers are illegal. Waivers of a criminal defendant's right to appeal or file a collateral attack are lawful so long as they are made "with knowledge of the nature [of those rights] and the consequences of the waiver." *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015); *see also United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001). Those waivers are enforceable so long as they were knowingly and voluntarily entered into and the enforcement of the waiver would not work a miscarriage of justice. *Fazio*, 795 F.3d at 425. Here, the record is abundantly clear that Petitioner was aware of the appellate and collateral attack waiver, understood its terms, and voluntarily agreed to it as part of his guilty plea. (*See* ECF No. 9-4 at 21-22.) As Petitioner was clearly aware of the terms of the waiver, and entered into it knowingly and voluntarily, and such waivers are common and enforceable, Petitioner has failed to show that counsel was ineffective in advising Petitioner to plead guilty pursuant to an agreement including such a waiver. Petitioner has likewise not shown prejudice as he has failed to even allege he would not have pled guilty had he been provided further information regarding these waivers.

Petitioner also asserts that he believes this Court lacked subject matter jurisdiction over his claims, and that he was not charged with conduct leading to a loss amount between $100,000 and $250,000. It is unclear why Petitioner believes this Court lacks subject matter jurisdiction over his criminal proceedings—clearly, this Court has jurisdiction over federal tax crimes committed in New Jersey such as the one to which Petitioner pled guilty. It is possible that Petitioner is again referencing his belief that the charges against him were untimely, but that belief, as discussed above, is mistaken. Petitioner has not shown that this Court lacked jurisdiction, and has thus failed to show that counsel was ineffective in permitting him to plead guilty on that basis. Petitioner's assertions regarding the loss amount are likewise mistaken—the information clearly charges

9

Petitioner with a tax loss of $25,725 in personal income tax loss and $147,566 in lost employment taxes, which Petitioner failed to pay. (*See* ECF No. 9-1.) Petitioner admitted to these same amounts during his guilty plea colloquy. (ECF No. 9-4 at 24-26.) In sum, these losses total well over $100,000 and less than $250,000, and thus the stipulation to which counsel advised Petitioner to agree to in the plea agreement was well- founded. Petitioner is mistaken that this amount was not included in the Information and his guilty plea colloquy, and he has not otherwise shown prejudice stemming from this loss amount in light of the Information and guilty plea.

Finally, Petitioner also appears to be asserting a claim that he was denied the ability to file an appeal because he was "advised by counsel" that he "waived his right to appeal" and that "failure [of counsel] to consult with client about appeal or file an appeal as instructed" led to his not filing a notice of appeal. (ECF No. 4 at 9.) As the Third Circuit has explained, claims that counsel failed to consult with a petitioner regarding his desire or lack thereof to file an appeal are governed by the Supreme Court's ruling in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000):

> [in *Flores-Ortega*,] the Court addressed whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant not to do so. Because the question concerned whether counsel's representation was constitutionally defective, the Court held that the two-part *Strickland* test governed its inquiry. [*Roe*, 528 U.S. at 476-77.] Applying that standard to the particular facts before it, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480[.] The Court further explained that it "employ[ed] the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478[.] Additionally, the Court instructed that courts undertaking this inquiry, as with all ineffective-assistance claims, "take into account all the information counsel knew or should have known." *Id.* at 480 . . . (citing *Strickland* [*v.*

10

> *Washington*, 466 U.S. 668, 690 (1984)]).
>
> > With respect to *Strickland*'s prejudice prong, the Court held that the harmless-error inquiry applied and that relief could not be granted unless the defendant "demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484[.] The Court did not identify any determinative factors in this regard, but did stress that "evidence that there were non-frivolous grounds for appeal or that the defendant at issue promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485[.]

*Shedrick*, 493 U.S. at 300-01; *see also Garza v. Idaho*, 586 U.S. 232 (2019) (*Flores-Ortega* rule applies even where there is an applicable appeal waiver).

Here, Petitioner alleges that counsel either failed to consult with him or failed to file an appeal as instructed, without clarifying which of these two events allegedly occurred. Petitioner also alleges that he signed paperwork stating that he would not file an appeal, despite desiring to do so, but Petitioner does not clarify if he is referring to the appellate waiver in his plea agreement or some other document. Counsel's records and recollection indicate that counsel discussed the matter with Petitioner and Petitioner indicated that he did not wish to appeal. As these two recollections differ, there is a factual issue which can only be resolved through a hearing. The Court will therefore hold a hearing solely as to Petitioner's claim that counsel failed to file an appeal on his behalf. *See Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001) (*Flores-Ortega* claim requires a hearing where there is a dispute of fact as to whether the petitioner indicated a desire to appeal and the petitioner's allegations are not "contradicted conclusively by the record" or "patently frivolous").

### 3. Petitioner's Prosecutorial Misconduct Claim

In his final claim, Petitioner asserts that he was "improperly charged" because (1) the charges were untimely, (2) the prosecutor's plea deal contained an appellate and collateral attack

11

waiver, and (3) Petitioner believes the plea deal "amended" the Information to change the loss amount to be between $100,000 and $250,000.  Even putting aside the fact that this claim is both procedurally deficient because it could have been, but was not, raised on direct appeal,[3] *see Murray v. Carrier*, 477 U.S. 478, 490-92 (1986), and is likely barred by the collateral attack waiver, Petitioner's claim is without merit.  As addressed above, Petitioner's charges were timely filed, the Information itself already asserted a loss amount between $100,000 and $250,000, and it is permissible for the Government to offer plea agreements which are subject to appellate and collateral attack waivers.  Petitioner's assertions of prosecutorial misconduct are thus patently meritless and must be denied.

### III.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  As Petitioner's non-*Flores-Ortega* claims are without merit for the reasons expressed above, those claims are not adequate to deserve

---

[3]   Although the Court does reject this claim on the merits, it is also clear that it is barred as procedurally deficient.  A petitioner's claim that could have been, but was not, raised on direct appeal is procedurally deficient and may not serve as a basis for relief in a § 2255 proceeding unless the petitioner shows cause and actual prejudice for the default or that he is actually innocent of the underlying offense.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *see also Parkin v. United States*, 565 F. App'x 149, 151-52 (3d Cir. 2014).  As Petitioner clearly could have raised claims of prosecutorial misconduct on direct appeal had he chosen to file an appeal, and as he has not even attempted to show cause, prejudice, or actual innocence, this claim is barred and may not serve as a basis for relief even if had it been of greater merit.

encouragement to proceed further, and Petitioner is denied a certificate of appealability as to all of his claims other than his *Flores-Ortega* claim.

## IV. CONCLUSION

For the reasons stated above, and other good cause shown, Petitioner's amended motion to vacate his sentence (ECF No. 4) is **DENIED** in part, Petitioner is **DENIED** a certificate of appealability as to his denied claims, and Petitioner is granted a hearing as to his *Flores-Ortega* claim. An appropriate Order follows.

Dated: September 9, 2024

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**